DESERET LIVESTOCK CO. v. STATE et al.

No. 6928. Decided July 27, 1946. (171 P. 2d 401.)

240

See 67 C. J., Waters, sec. 428; 36 Am. Jur., 283. Water as "Minerals," note 148 A. L. R. 780.

*Moyle, McKay, Burton & White,* of Salt Lake City, for appellant.

*Grover A. Giles,* Atty. Gen., and *Edward W. Clyde,* of Salt Lake City, for respondents.

WADE, Justice.

On December 21, 1940, the Deseret Livestock Company, appellant herein, filed an application with the State Engineer for the appropriation of 22 second feet of water at a certain point on Great Salt Lake for the purpose of recovering the salt and mineral content therefrom. On March 7, 1941, the State Land Board filed a protest to the granting of this application. On March 12, 1941, the legislature passed an act which became effective May 13, 1941, amending Section 86-1-15, R. S. U. 1933, as amended by Chapter 97, Laws of Utah 1935, whereby salts and other minerals in waters of navigable lakes and streams are reserved to the state, and giving the State Land Board the right to sell these on a royalty basis on terms to be determined by it. It also provides that before the State Land Board enters into a royalty contract for the sale of such salt and minerals found in navigable lakes and streams and to be recovered therefrom, it must require evidence that an application for the appropriation of water for such purpose has been filed with the State Engineer.

On March 13, 1941, the legislature passed a companion amendment which became effective May 13, 1941, amending Section 100-3-8, R. S. U. 1933, as amended by Chapter 111, Laws of Utah 1939, whereby is provided that:

"* * * Before the approval of any application for the appropriations of water from navigable lakes or streams of the state which contemplates the recovery of salts and other minerals therefrom by precipitation or otherwise, the applicant shall file with the state engineer a copy of a contract for the payment of royalties to the state of Utah; * * *."

A hearing was held on appellant's application and the protest thereto on August 5, 1942, and on February 19,

1943, the State Engineer approved the application subject to the filing with him of a royalty contract with the State Land Board as provided by Section 100-3-8, Chap. 96, Laws of Utah 1941.

Appellant objected to this condition and filed an action for a plenary review of the State Engineer's decision in the Third Judicial District Court, in which it alleged that its application was not subject to the provisions of Chapters 91 and 96, Laws of Utah 1941, because its application was filed prior to the enactment of these acts and neither of the provisions in the acts upon which the State Engineer based his decision was made retroactive in its effect; and also that the state does not own the salt carried in solution in the water subject to appropriation and therefore the acts seeking to give the state the right to sell such salts or minerals and requiring the filing of a royalty contract before the approval of an application by the State Engineer are unconstitutional.

This appeal is taken from the judgment of the district court in favor of the decision of the State Engineer. The court found that Chapters 91 and 96, Laws of Utah 1941, are constitutional and valid enactments and apply to appellant's application, and that the state is the owner of the salt carried in solution in the waters of Great Salt Lake. Appellant cites these conclusions of law as error.

We shall first determine whether the state owns the salt carried in solution in the waters of Great Salt Lake. Before we are able to do this we have to determine whether the salt in solution is an inseparable part of that water, or is it a mineral valuable for its own sake.

This court will take judicial knowledge of the fact that Great Salt Lake is a navigable body of water and that it contains about 22 per cent salt in solution ■ therein. In 36 Am. Jur., Mines and Minerals, Sec. 4, it is stated:

"* * * Accordingly a number of authorities prefer to define a 'mineral' as any natural substance having sufficient value to be mined, quarried, or extracted for its own sake or its own specific use."

Under this definition it is apparent that the salt found in the waters of Great Salt Lake because of its quantity is a "mineral" and is valuable for its own sake. In fact it is because the salt found in the water is valuable for its own sake, that appellant seeks to appropriate the water and thereafter extract the salt from it.

Our appropriation laws apply to water as such, and not to minerals valuable for their own sake which may be found therein. By the provisions of Section 100-1-1, R. S. U. 1933, as amended by Chapter 105, Laws of Utah 1935, now Section 100-1-1, U. C. A. 1943, all waters in the state were dedicated to the public subject to existing rights to the use thereof. The only manner in which water can be appropriated is by being placed to a beneficial use. The use of water for the precipitation of salt is such a beneficial use, and if appellant were seeking to appropriate water to carry salt which belonged to it, it would be placing the water to a beneficial use and under our laws would be entitled to appropriate as much water as it needed for that purpose and which had not already been appropriated. However, appellant does not own the salt. The salt which it seeks is contained within Great Salt Lake, which is a navigable body of water. Because it is a navigable body of water its bed belongs to the state subject to the control of Congress for navigation in commerce. See *United States of America* v. *Utah,* 283 U. S. 64, 51 S. Ct. 438, 75 L. Ed. 844. See also *Robinson* v. *Thomas et al.,* 75 Utah 446, 286 P. 625, in which this court upheld a state lease for the sole purpose of mining salt on land which had been part of the bed of Great Salt Lake at the time of statehood, as against a placer mining claimant. It is our opinion that the state as the owner of the beds of navigable bodies of waters is entitled to all valuable minerals in or on them. See *Utah Copper Co.* v. *Montana-Bingham Consolidated Mining Co.,* 69 Utah 423, 255 P. 672, in which this court held that the owner of a mining dump was entitled to copper in solution in the water which was on its dump and which it captured there before it escaped to other lands, and therefore had the right to con-

demn a right of way over defendant's land for the purpose of constructing works to retrieve the copper from the water.

Appellant cites *Utah Copper Co.* v. *Stephen Hayes Estate, Inc., et al.,* 83 Utah 545, 31 P. 2d 624, as authority for the proposition that the laws applicable to waters apply to minerals in solution in water. In that case the owner of a mining dump sought to condemn certain tracts of land belonging to defendants so that it could capture on their land water laden with copper which was escaping from its dump. The copper in solution came from ores placed in the dump by the plaintiff and which in the course of years had become dissolved in waters caused by the fall of rain and snow on the dump. The copper-laden water percolated naturally onto a gulch which belonged to defendants and the plaintiff was seeking to capture this solution on defendants' land. This court in holding that defendants' land could not be condemned for that purpose applied the law that property of a fluid nature belonged to the landowner as long as it remained on his land, but if allowed to escape the landowner could not follow it. No right to appropriate water was involved in this case as percolating waters were not subject to appropriation. The water and the minerals therein were held to belong to the owner of whatever land it happened to be on. In the instant case appellant is not seeking to retain the salt from water which has escaped onto its lands but is seeking to divert it to its land by artificial means without first acquiring the right to the salt.

Since the state is the owner of the salt contained in the waters of Great Salt Lake, it follows that appellant is in no position, until it acquires rights to the salt therein, to place that water to a beneficial use as its sole purpose for its attempted appropriation is to extract the salt from the water. If it cannot place the water to a beneficial use it cannot appropriate the water because beneficial use is the only basis upon which water can be appropriated in this state. It also follows that as the state is the owner of the salt the 1941 amendments to Section 86-1-15, R. S. U. 1933, and Section 100-3-8, R. S. U. 1933,

are not unconstitutional because they take no right which could have been acquired by the filing of an application for the appropriation of water before their enactment, but merely provide a method by which rights to the salt may be acquired from the State Land Board and thus place one in a position to put the water to a beneficial use and also provide a check with the State Engineer so that no water may be appropriated from navigable bodies of water, the beds of which belong to the state, for the sole purpose of taking therefrom the minerals which do not belong to the appropriator.

Affirmed, Costs to respondents.

LARSON, C. J., and McDONOUGH, PRATT, and WOLFE, JJ., concur.