# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: October 24, 2018

**NO. A-1-CA-36906**

**STATE OF NEW MEXICO ex rel.**
**HECTOR BALDERAS, ATTORNEY**
**GENERAL,**

Plaintiff-Appellee,

v.

**BRISTOL-MYERS SQUIBB COMPANY,**
**SANOFI-AVENTIS U.S. LLC, SANOFI US**
**SERVICES, INC. f/k/a SANOFI-AVENTIS**
**U.S. INC., SANOFI-SYNTHELABO INC.,**
**and DOE DEFENDANTS 1 to 100,**

Defendants-Appellants.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Sarah M. Singleton, District Judge Pro Tem**

Office of the Attorney General
Consumer & Environmental Protection
P. Cholla Khoury, Assistant Attorney General
Santa Fe, NM

Robles, Rael and Anaya, P.C.
Marcus J. Rael, Jr.
Albuquerque, NM

Baron & Budd, P.C.
Daniel Alberstone
Jonas P. Mann
Peter KlausnerEncino, CA
Russell Budd
Dallas, TX
Jules Burton LeBlanc IV
Baton Rouge, LA

for Appellee

Arnold & Porter Kaye Scholer LLP
Kirk Ogrosky
Murad Hussain
Washington, DC
Anand Agneshwar
New York, NY

Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Earl E. DeBrine, Jr.
Timothy C. Holm
Albuquerque, NM

for Appellants

**OPINION**

**VANZI, Chief Judge.**

{1}    In this interlocutory appeal, we consider whether a federal district court's dismissal of qui tam claims for failure to state a claim bars the State from pursuing different claims arising from similar facts, where the State had not intervened in the qui tam action. We conclude that it does not and, therefore, affirm the denial of Defendants' motion to dismiss.

**BACKGROUND**

**Qui Tam Actions**

{2}    In order to situate the facts leading to this appeal, we begin with an overview of qui tam actions generally and the relevant statutes that establish and govern them. "In a 'qui tam action,' a private plaintiff, . . . known as a 'relator,' brings suit on behalf of the government to recover a remedy for a harm done to the government." 36 Am. Jur. 2d *Forfeitures and Penalties* § 83 (2018) (footnotes omitted). "He or she pursues the government's claim against the defendant and asserts the injury in fact suffered by the government, which confers standing on the relator to bring the action as a representative of the [s]tate and as a partial assignee of the government's claim." *Id.* (footnotes omitted). A qui tam action arises only by statute, specifically authorizing a private party to sue on behalf of the government. *Id.* The federal False Claims Act (FCA) and state laws similar to it are

typical qui tam statutes. *See United Seniors Ass'n v. Philip Morris USA*, 500 F.3d 19, 24 (1st Cir. 2007) (stating that the FCA is a "typical and commonly-invoked qui tam action").

**The FCA and the New Mexico Medicaid False Claims Act**

**{3}** "The [FCA] prohibits false or fraudulent claims for payment to the United States, and authorizes civil actions to remedy such fraud to be brought by the Attorney General or by private individuals in the government's name." 32 Am. Jur. 2d *False Pretenses* § 85 (2018); 31 U.S.C. §§ 3729-3733 (2012). Under the FCA, "[t]he Attorney General diligently must investigate a violation of the false claims statute[,]" and "[i]f the Attorney General finds that a person has violated or is violating such statute, the Attorney General may bring a civil action against the person." 32 Am. Jur. 2d *False Pretenses* § 85; 31 U.S.C. § 3730(a). In addition, the FCA permits relators to "file qui tam civil actions on behalf of the United States for the making of a false claim against government funds." 32 Am. Jur. 2d *False Pretenses* § 85; 31 U.S.C. § 3730(b).

**{4}** Similarly, the New Mexico Medicaid False Claims Act (MFCA), NMSA 1978, §§ 27-14-1 to -15 (2004), provides for liability where a person presents "a claim for payment under the medicaid program knowing that such claim is false" or otherwise defrauds the state through the state medicaid program. Section 27-14-4. Like the FCA, the MFCA requires the Human Services

2

Department (HSD) to investigate suspected violations and permits HSD to bring a civil action. Section 27-14-7(A). In addition, the MFCA contains a qui tam provision that permits "[a] private civil action [to] be brought by an affected person for a violation of the [MFCA] on behalf of the person bringing suit and for the state." Section 27-14-7(B).

{5} Both the FCA and MFCA require a relator to provide a copy of the complaint and written disclosure of material evidence possessed by the relator to the government so that the government may determine whether there is substantial evidence that a violation has occurred. 31 U.S.C. § 3730(b)(2); § 27-14-7(C). The complaint is sealed for at least sixty days to allow the government to undertake such an investigation. 31 U.S.C. § 3730(b)(2); § 27-14-7(C). Upon completion of the investigation, the government may either "proceed with the action, in which case the action shall be conducted by the [g]overnment[,]" or decline to take over the action. 31 U.S.C. § 3730(b)(4); § 27-14-7(E). If the government declines to pursue the claims in the relator's complaint, "the person who initiated the action shall have the right to conduct the action." 31 U.S.C. § 3730(c)(3); § 27-14-8(D). Regardless of whether the government intervenes in the action, the relator may receive a portion of any ensuing recovery. 31 U.S.C. § 3730(d); § 27-14-9.

{6} The FCA and MFCA differ in that, under the MFCA, the relator may continue the action only "[i]f the department determined that there is substantial

3

evidence that a violation of the [MFCA] has occurred" and that "[i]f the department determines that there is not substantial evidence that a violation has occurred, the complaint shall be dismissed." Section 27-14-7(C), (E)(2).

**The First Suit: *In re Plavix Marketing, Sales Practice & Products Liability Litigation***

{7}     The first suit at issue was initiated in March 2011 by relator Elisa Dickson (Relator), who filed a complaint alleging that Bristol-Myers Squibb Company, Sanofi-Aventis U.S., LLC; Sanofi-Aventis U.S., Inc.; and Sanofi-Synthelabo, Inc., (Defendants), manufacturers and marketers of the prescription drug Plavix, promoted Plavix in violation of the FCA and various states' similar fraud statutes, including New Mexico's MFCA. *See In re Plavix Mktg., Sales Practice & Prods. Liab. Litig. (No. II) v. Bristol-Myers Squibb Co.*, ___ F. Supp. 3d ___, 2017 WL 2780744, at *1-4 (D.N.J. 2017).[1] Pursuant to the provisions of the MFCA, Relator served New Mexico with "a copy of the complaint and written disclosure of substantially all material evidence and information [Relator] possesses." Section 27-14-7(C). New Mexico declined to intervene in Relator's suit and, therefore, declined to take over litigation of the MFCA claim. *In re Plavix Mktg.*, 2017 WL 2780744, at *2.

---

[1]Relator filed the initial complaint in Illinois, but the suit was transferred to the United States District Court for the District of New Jersey to be part of the Plavix Multi-District Litigation. *Id.* at *2.

{8}     Relator filed several amended complaints. *Id.* In August 2015, the federal district court dismissed the New Mexico MFCA claim, among others, for failure to state a claim for relief. *Id.* A year later, in August 2016, Relator filed a fourth amended complaint reasserting the MFCA claim, among others. *Id.* at \*3. On Defendants' motion, the federal district court dismissed Relator's fourth amended complaint in June 2017. *Id.* at \*1, \*3. Relator did not appeal the dismissal or request permission to amend the complaint again. This final dismissal is central to Defendants' claim preclusion argument.

**The Second Suit:** *State of New Mexico ex rel. Hector Balderas, Attorney General v. Bristol-Myers Squibb, et al.*

{9}     Shortly after Relator filed the fourth amended complaint in *In re Plavix Marketing*, but before its final dismissal, the New Mexico Attorney General (the State) brought the present action in the First Judicial District Court. The complaint alleges that "Defendants' false, deceptive, and unfair labeling and promotion of their prescription antiplatelet drug Plavix" violated the New Mexico Unfair Practices Act (UPA), NMSA 1978, §§ 57-12-1 to -26 (1967, as amended through 2009); the New Mexico Medicaid Fraud Act (MFA), NMSA 1978, §§ 30-44-1 to -8 (1989, as amended through 2004); and the New Mexico Fraud Against Taxpayers Act (FATA), NMSA 1978, §§ 44-9-1 to -14 (2007, as amended through 2015), as well as common law and equitable causes of action. The complaint did not allege violations of the MFCA.

{10} Defendants moved to dismiss the State's complaint, arguing that the State had failed to state its claims. They also maintained that the suit should be dismissed without prejudice or stayed pending resolution of the *In re Plavix Marketing* action and that the State was inappropriately splitting its claims. Without ruling on the substantive arguments in the motion, the state district court stayed the action pending the outcome of Defendants' motion to dismiss in *In re Plavix Marketing*. Once the federal district court dismissed Relator's fourth amended complaint, the state district court lifted the stay and ordered supplemental briefing on the impact of the dismissal of Relator's claims on the State's complaint and Defendants' motion to dismiss. In supplemental briefing, Defendants argued that the doctrine of claim preclusion bars the State's complaint. They also argued that, even if claim preclusion did not bar the State's claims in their entirety, the claims based on the MFA and FATA should be dismissed for failure to state a claim for the same reasons relied on by the federal district court.

{11} The state district court granted in part and denied in part Defendants' motion to dismiss for failure to state a claim. It found that the State's MFA claim failed as a matter of law and that the economic loss doctrine barred the State's negligence claim. It therefore dismissed those claims with prejudice. It found that the State had inadequately pleaded the UPA and equitable tolling claims but dismissed those claims without prejudice and ordered the State to file an amended complaint if it

6

chose to rectify the deficiencies in the first complaint. The court found the remaining claims adequately pleaded. The State then filed its first amended complaint, which includes claims for violations of the UPA and FATA, as well as common law claims for fraud and unjust enrichment.

{12} In a separate order, the state district court denied Defendants' motion to dismiss the State's complaint on claim preclusion grounds. Although it stated that Relator's claims had been dismissed "with prejudice," it found that "[claim preclusion] does not apply here because the causes of action are not the same in the two suits" and that "[R]elator in [*In re Plavix Marketing*] did not assert any of the claims the State asserts in this case, but rather only a single New Mexico [MFCA] claim." It also stated that "while [R]elator . . . stood in the shoes of the State of New Mexico for purposes of the New Mexico [MFCA] claim, [R]elator did not stand in the State's shoes for purposes of the claims asserted by the State here." Finally, the state district court concluded that "in a case such as this, where [R]elator's claims were dismissed based on a failure to comply with the heightened pleading requirements of [Federal Rule of Civil Procedure] 9(b), and not based on the merits of the claim, it would be inappropriate to bar the State's claims."

{13} However, the state district court also found that "[r]egarding the application of [claim preclusion] only," its order "(1) does not practically dispose of the merits of the action, (2) involves a controlling question of law as to which there is

substantial ground for difference of opinion, and (3) an immediate appeal from this order or decision may materially advance the ultimate termination of the litigation." *See* NMSA 1978, § 39-3-4(A), (B) (1999) (providing for interlocutory appeal of district court orders pursuant to this Court's appellate jurisdiction). It therefore certified for interlocutory appeal the portion of the order pertaining to application of claim preclusion. This Court granted Defendants' application for interlocutory appeal. *See* Rule 12-203 NMRA (governing interlocutory appeals).

**DISCUSSION**

{14}    The issue before the Court is whether the federal court's dismissal of Relator's MFCA claim precludes the State's claims for violations of the UPA and FATA, as well as common law fraud and unjust enrichment. We review such questions of law de novo. *Bank of N.Y. v. Romero*, 2016-NMCA-091, ¶ 15, 382 P.3d 991. In addition, "[b]ecause the prior action was in federal court, federal law determines the preclusive effect of a federal judgment." *Moffat v. Branch*, 2005-NMCA-103, ¶ 11, 138 N.M. 224, 118 P.3d 732; *see* Restatement (Second) of Judgments § 87 (1982) ("Federal law determines the effects under the rules of [claim preclusion] of a judgment of a federal court."). However, this Court may rely on both federal and New Mexico law on claim preclusion because "[f]ederal law and New Mexico law are not divergent on claim preclusion doctrine, and both

8

find the Restatement (Second) of Judgments . . . persuasive." *Moffat*, 2005-NMCA-103, ¶ 11.

**General Claim Preclusion Law**

{15} "[Claim preclusion] prevents a party or its privies from repeatedly suing another party for the same cause of action when the first suit involving the parties resulted in a final judgment on the merits." *Rosette, Inc. v. U.S. Dep't of the Interior*, 2007-NMCA-136, ¶ 33, 142 N.M. 717, 169 P.3d 704. Generally, the doctrine applies where "three elements are met: (1) a final judgment on the merits in an earlier action, (2) identity of parties or privies in the two suits, and (3) identity of the cause of action in both suits." *Id.* When these elements are satisfied, the defense of claim preclusion bars relitigation not only of claims actually brought by the plaintiff and its privies, but also claims that could have been brought in the first action. *Kirby v. Guardian Life Ins. Co. of Am.*, 2010-NMSC-014, ¶ 61, 148 N.M. 106, 231 P.3d 87.

{16} For claim preclusion to apply, the first suit must have ended in a "judgment on the merits." *Rosette, Inc.*, 2007-NMCA-136, ¶ 33. Generally, a dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a "judgment on the merits" for purposes of claim preclusion. *Federated Dep't*

9

*Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n.3 (1981).[2] Although this general rule is often stated broadly, it is not without nuance. Because "[a] motion to dismiss for failure to state a claim under Rule 1-012(B)(6) . . . tests the legal sufficiency of the complaint, not the facts that support it[,]" *Wallis v. Smith*, 2001-NMCA-017, ¶ 6, 130 N.M. 214, 22 P.3d 682, the designation of such a dismissal as "on the merits" is something of a misnomer. In *Kirby*, the New Mexico Supreme Court explained that "[a] dismissal with prejudice is an adjudication on the merits *only to the extent that* when a claim has been dismissed with prejudice, the [final judgment on the merits] element of [claim preclusion] . . . will be presumed so as to bar a subsequent suit." 2010-NMSC-014, ¶ 66 (emphasis added). This is so because "[i]f this were otherwise, plaintiffs could simply ignore dismissals and file the same claim as many times as they wished, so long as the claim never progressed to a determination of the substantive issues." *Id.* Thus, the intent behind considering a Rule 12(b)(6) dismissal as "on the merits" is practical: to limit repetitive filings. *See Kirby*, 2010-NMSC-014, ¶ 66. Such a dismissal obviously does not involve "a judicial determination of" the actual merits. *See id.* ¶ 67. Conversely, "[t]he words 'without prejudice' when used in an order or decree generally indicate that there

---

[2]"Because the language of Rule 1-012 [NMRA] closely parallels that of its federal counterpart, Rule 12 of the Federal Rules of Civil Procedure, we find federal authority interpreting Rule 12 . . . instructive." *Doe v. Roman Catholic Diocese of Boise, Inc.*, 1996-NMCA-057, ¶ 5, 121 N.M. 738, 918 P.2d 17. We also cite to Rule 1-012(B)(6) NMRA and Federal Rule of Civil Procedure 12(b)(6) interchangeably.

has been no resolution of the controversy on its merits and leave the issues in litigation open to another suit as if no action had ever been brought." *Bralley v. City of Albuquerque*, 1985-NMCA-043, ¶ 18, 102 N.M. 715, 699 P.2d 646.

**Defendants' Arguments**

{17} Defendants contend that the elements of claim preclusion are met here. Defendants argue that the *In re Plavix Marketing* dismissal was "on the merits" because Relator either failed to plead the requisite materiality under *Universal Health Services, Inc. v. United States ex rel. Escobar*, ___ U.S.___, ___, 136 S. Ct. 1989, 2001-03 (2016), or failed to allege conduct recognized as violative of the FCA. *See United States ex rel. Petratos v. Genentech Inc.*, 855 F.3d 481, 487 (3d Cir. 2017) ("A [FCA] violation includes four elements: falsity, causation, knowledge, and materiality."); *In re Plavix Mktg.*, 2017 WL 2780744, *8 (same). They also claim that the State was in privity with Relator because Relator represented the State's interests in the *In re Plavix Marketing* action. Finally, they argue that the State's claims "arise out of a common nucleus of operative facts" related to Defendants' marketing practices and, therefore, constitute the "same cause of action" as in *In re Plavix Marketing*. In sum, Defendants maintain that, as a privy to Relator, the State was required to bring all of its claims in *In re Plavix Marketing*, and having failed to do so, the State must be barred from bringing them in a different suit.

11

**Claim Preclusion in the Context of Qui Tam Actions**

{18} We first observe that, as a general proposition, "[i]f [the relator] had litigated a qui tam action to the gills and lost, neither another relator nor the [government] could start afresh." *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009). This is true because the relator sues on behalf of the government to vindicate the government's interests, and, although the government is not a named party to the relator's suit, it is a real party in interest. *United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 934 (2009) (stating that the government, although a real party in interest, is not a "party" to a qui tam action).

{19} However, courts have also recognized that, under certain circumstances, the government's role in vindicating public interests militates against preclusion of its claims. *Cf.* Nathan D. Sturycz, *The King and I?: An Examination of the Interest Qui Tam Relators Represent and the Implications for Future False Claims Act Litigation*, 28 St. Louis U. Pub. L. Rev. 459, 462-63 (2009) (noting that even though "[i]n the non-FCA context, the concepts of preclusion would normally prevent duplicative litigation[, a]pplication of preclusion [in FCA cases] is muddled . . . by the distinction between the interests represented in a prior private cause of action and those represented in FCA litigation"). Thus, courts have repeatedly found that suits by or on behalf of the government should not be precluded by certain actions of a private party, even when that party acts as a qui

tam relator. This is especially true when the first suit is dismissed for reasons unrelated to the merits of the claims.

{20} For example, federal courts have relied on the fact that a Rule 12(b)(6) dismissal is based only on the relator's complaint, not the factual bases underlying the allegations, to hold that such a dismissal does not preclude the government's claims when the government has not intervened. *See, e.g.*, *United States ex rel. Williams v. Bell Helicopter Textron, Inc.*, 417 F.3d 450, 455-56 (5th Cir. 2005).

{21} In *Williams*, the district court dismissed the relator's FCA claims because the relator failed to plead them with sufficient particularity under Rules 12(b)(6) and (9)(b). *Williams*, 417 F.3d at 455. The district court dismissed the complaint with prejudice as to both the relator and the government, stating that it was "dismissing the claims against the government with prejudice because it believed 'the United States has had ample opportunity to participate in the prosecution of those claims if [it] had any notion that any of them has the slightest merit,' " suggesting that the government's failure to intervene indicated that it found the claims meritless. *Id.*

{22} The United States Court of Appeals for the Fifth Circuit reversed and modified the dismissal to be without prejudice as to the government. *Id.* at 456. First, the court dismissed as "unreasonable" any speculation about the government's reasons for not intervening and the district court's inference that the

government would have intervened if it found the relator's FCA claims "meritorious." *Id.* at 455. It observed that the FCA requires the Attorney General to conduct an investigation of the relator's allegations, but the FCA "does not require the government to proceed if its investigation yields a meritorious claim." *Id.* "Indeed, absent any obligation to the contrary, it may opt out for any number of reasons. For example, a decision not to intervene may 'not necessarily be an admission by the [government] that it has suffered no injury in fact, but rather the result of a cost-benefit analysis.' " *Id.* (alterations omitted) (quoting *United States ex rel. Berge v. Bd. of Trs. of the Univ. of Ala.*, 104 F.3d 1453, 1458 (4th Cir. 1997)). The court concluded, "[G]iven the Rule 9(b) deficiencies, the government may have determined that the costs associated with proceeding based on a poorly drafted complaint outweighed any anticipated benefits." *Williams*, 417 F.3d at 455.

{23}     The *Williams* court then noted that a dismissal with prejudice as to the government would give private parties "perverse incentives" to file poorly drafted or improperly pleaded qui tam actions. *Id.* "By essentially requiring the government to intervene in order to avoid forfeiting any future claims against the defendant, private parties would have the added incentive to file FCA suits lacking in the required particularity, knowing full well that the government would be obligated to intervene and ultimately 'fill in the blanks' of the deficient complaint." *Id.* It went on to state that the district court's approach would allow "a relator, in

14

the most egregious of circumstances, to make sweeping allegations that, while true, he is unable to effectively litigate, but which nonetheless bind the government, via [claim preclusion], and prevent it from suing over those concerns at a later date when more information is available." *Id.* (internal quotation marks and citation omitted). It therefore concluded that the district court had abused its discretion by dismissing the complaint with prejudice as to the government. *Id.* at 456.

{24} Without deciding the preclusive effect of a Rule 12(b)(6) dismissal on future related actions, but relying on *Williams*, the Eleventh Circuit also modified a district court's dismissal for failure to state a claim to be without prejudice to the government. *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1057 (11th Cir. 2015). A number of federal district courts have also followed *Williams* and held that a dismissal of a relator's complaint for insufficient pleading should be without prejudice to the government. In each of these cases, the government had declined to intervene in the relators' actions. *See, e.g.*, *United States v. KForce Gov't Sols., Inc.*, No. 8:13-cv-1517-T-36TBM, 2014 WL 5823460, at \*6 n.2, \*9 (M.D. Fla. Nov. 10, 2014) (dismissing an FCA complaint for failure to satisfy the Rule 9 pleading requirements and stating that dismissal is without prejudice to the government); *United States ex rel. Boros v. Health Mgmt. Assocs.* (*Health Mgmt. I*), No. 4:10-cv-10013-KMM, 2013 WL 12077816, at \*1-2 (S.D. Fla. July 26, 2013) (clarifying that dismissal was without prejudice to the government after the

15

relator's FCA complaint was dismissed for failure to state a claim); *United States ex rel. Banigan v. Organon USA, Inc.*, Civil Action H-08-3314, 2013 WL 12142351, at \*34 (S.D. Tex. Feb. 1, 2013) (agreeing that "the dismissal [for inadequate pleadings] should be without prejudice to the [government] because it has no involvement in preparing the complaint" and stating that "if the [c]ourt dismisses [the r]elators' complaint on insufficient pleading grounds, the dismissal would not preclude the government from bringing or continuing an action involving the same or similar claims"); *United States ex rel. Rostholder v. Omnicare, Inc.*, No. CCB-07-1283, 2012 WL 3399789, at \*15 (D. Md. Aug. 14, 2012) (stating that "[t]he government's decision not to intervene . . . does not suggest that the government necessarily believed that no FCA case was viable . . . [and a]ccordingly, it would be inappropriate to dismiss with prejudice as to the [government] *or as to the states or localities* on whose behalf relator brought this claim" (emphasis added)), *aff'd*, 745 F.3d 694 (4th Cir. 2014). *But see Lusby*, 570 F.3d at 853 (stating that the district court erred in ordering a qui tam complaint dismissed with prejudice to the plaintiff and without prejudice to the government, but holding that judgment in a private suit did not bar a later qui tam action).

{25}     Similarly, courts have dismissed a complaint with prejudice to the relator, but without prejudice to the government, where the relator failed to prosecute or acted improperly in litigation. *See, e.g.*, *United States ex. rel. Prince v. Va. Res.*

16

*Auth.*, 2014 WL 3405657, at *3 (W.D. Va. July 10, 2014) (failure to prosecute), *aff'd*, 593 Fed. App'x 230 (4th Cir. 2015); *United States ex rel. King v. DSE, Inc.*, No. 8:08-CV-2416-T-23EAJ, 2013 WL 610531, at *11 (M.D. Fla. Jan. 17, 2013) (litigation misconduct); *cf. United States ex rel. Vaughn v. United Biologics, L.L.C.*, ___ F.3d. ___, 2018 WL 5000074, at *5 (5th Cir. 2018) (stating that "when the case's outcome is decided by the relator's voluntary decision to quit, courts tend not to bind the [g]overnment to that decision automatically" and collecting cases).

**{26}** Although distinguishable on its facts, *State ex rel. Peterson v. Aramark Correctional Services, LLC*, 2014-NMCA-036, 321 P.3d 128, echoes the reasoning in *Williams*. In *Peterson*, this Court considered whether a summary judgment in the plaintiff's personal injury suit barred the same plaintiff's later qui tam action against the same defendant. 2014-NMCA-036, ¶¶ 1-2. Holding that it did not, this Court noted that, as a qui tam relator, the plaintiff represented the state, rather than himself, and therefore, his capacity in the two suits was not the same and the "same parties or their privies" element of claim preclusion was not met. *Id.* ¶¶ 24, 33. In its analysis, this Court, like *Williams*, recognized that claim preclusion in the qui tam context could operate adverse to the public interest. *Peterson*, 2014-NMCA-036, ¶ 30. It stated that " 'it would be inappropriate to snuff out the government's interest [in the qui tam action] just because a potential relator thoughtlessly omitted

17

a qui tam claim from a[n earlier] personal suit.' " *Id.* (alterations omitted) (quoting *Lusby*, 570 F.3d at 852). "[W]ere a personal lawsuit held to preclude a qui tam suit on claim preclusion grounds, the government would be incapable of vindicating its interest by bringing a new qui tam suit, either on its own or through another relator" because the government would be bound by the judgment in the personal lawsuit. *Id.*[3]

{27}   Defendants argue that the *Williams* holding is inapposite for three reasons. Defendants first argue that the United States Supreme Court's decision in *Eisenstein* supersedes *Williams*. Defendants rely on the statement in *Eisenstein* that "the [government] is bound by the judgment in all FCA actions regardless of its participation in the case." 556 U.S. at 936. But the *Eisenstein* Court was not considering the issue here; rather, the issue there was whether the government was a "party" to a privately initiated FCA action such that the private party could benefit from the longer period in which to appeal provided to the government under Federal Rule of Appellate Procedure 4(a)(1)(B). *Eisenstein*, 556 U.S. at 931. "The general rule is that cases are not authority for propositions not considered."

---

[3]Notably, although it was unnecessary for the *Peterson* Court to discuss this fact under the circumstances of that case, "the district court granted [the defendant's] motion for summary judgment, and dismissed, with prejudice, all claims brought on behalf of [the qui tam p]laintiff, stating, however, that its order did not prejudice the [s]tate's ability to bring a related action based on the same facts." *Id.* ¶ 20.

*Sangre de Cristo Dev. Corp. v. City of Santa Fe*, 1972-NMSC-076, ¶ 23, 84 N.M. 343, 503 P.2d 323.

**{28}** In addition, the statement relied on by Defendants was a statement of the appellant's argument, not a statement of law by the Court. *See Eisenstein*, 556 U.S. at 936 ("[*P*]*etitioner relies on the fact* that the [government] is bound by the judgment in all FCA actions regardless of its participation in the case." (emphasis added)). "[I]n light of *Eisenstein*'s narrow holding—that the [g]overnment was not a 'party' for the purposes of [Rule] 4(a)(1)(B)—it would be inappropriate to interpret this passing observation so broadly." *Vaughn*, 2018 WL 5000074, at *6 (rejecting an argument that *Eisenstein* abrogated *Williams*); *accord USA ex rel. Mastej v. Health Mgmt. Assocs.* (*Health Mgmt. II*), No. 2:11-cv-89-FtM-29DNF, 2014 WL 12616929, at *2 (M.D. Fla. June 10, 2014); *Health Mgmt. I*, 2013 WL 12077816, at *1. Finally, as shown above, a number of federal courts have relied on *Williams* after *Eisenstein* was decided in 2009. *But see Lusby*, 570 F.3d at 853 (stating that *Eisenstein* foreclosed dismissal without prejudice as to the government).

**{29}** Defendants next argue that the policy considerations in *Williams* are inapposite because the MFCA "required New Mexico to determine whether there was substantial evidence of a violation . . . and to dismiss the claim if none existed." They argue that this "obligation means that no qui tam complaint brought

19

under the [MFCA] should ever receive the State's approval to proceed if, like the [*Williams*] complaint, it is so facially deficient that it lacks substantial evidentiary support." It is true that Section 27-14-7 requires that, when a claim is supported by substantial evidence, the state must either pursue the claim or permit the relator to pursue it. *See* § 27-14-7(E) (providing that if there is substantial evidence, the state "*shall*: (1) proceed with the action, in which case the action shall be conducted by the department; or (2) notify the court and the person who brought the action that it declines to take over the action" (emphasis added)). However, Defendants' argument conflates a determination of evidence supporting a claim with a determination of the adequacy of the relator's complaint. The state is required to determine only whether "there is substantial evidence that a violation has occurred," not whether the relator's complaint adequately alleges a violation. Section 27-14-7(C); *see Wallis*, 2001-NMCA-017, ¶ 6 (stating that "[a] motion to dismiss for failure to state a claim under Rule 1-012(B)(6) . . . tests the legal sufficiency of the complaint, not the facts that support it"). To hold that the state is required to involve itself in the articulation of the relator's claims in the complaint is tantamount to requiring the state to intervene in the action. Such a result is contrary to the clear intent of the MFCA to deputize private parties to seek recovery on the state's behalf. *See Berge*, 104 F.3d at 1458 (stating that "the plain language of the [FCA] clearly anticipates that even after the [government] has

20

'diligently' investigated a violation . . . , the [g]overnment will not necessarily pursue all meritorious claims; otherwise there is little purpose to the qui tam provision permitting private attorneys general"); *see Vaughn*, 2018 WL 5000074, at \*5 (citing *Williams* for the proposition that "the non-intervening [g]overnment should not be bound by the fate of an incompetent relator, lest it be forced to intervene in every action"); *see also* § 27-14-8(D) ("If the state elects not to proceed with the action, the person bringing the action shall have the right to conduct the action."); *cf. Williams*, 417 F.3d at 455 (stating that the government might decline to intervene, even if there is evidence of a violation, because "the costs associated with proceeding based on a poorly drafted complaint [by the relator] outweighed any anticipated benefits").

**{30}** Finally, Defendants contend that *Williams* is factually distinguishable from the circumstances here. They argue that in *Williams*, the qui tam complaint was dismissed because it was "so deficient [under Rule 9(b)] that the court never reached the merits of the claim[,]" *Williams*, 417 F.3d at 456, whereas here Relator's claim was instead dismissed based on the "heightened pleading standard for materiality under the FCA," rather than the pleading requirements for fraud under Rule 9(b). *In re Plavix Mktg.*, 2017 WL 2780744, \*10. They point out that the federal district court found that Relator had "pleaded herself out of court" by alleging facts that negated an essential element of an FCA claim. Thus, because

21

Relator "could not plead the required element of 'materiality' as a matter of law[,]" the dismissal was on the merits.

{31} We do not read *Williams* as narrowly as Defendants. The *Williams* holding was not limited to the Rule 9(b) pleading standard. Instead, the core of the *Williams* holding is the failure to adequately plead an FCA claim under Rule 12(b)(6), regardless of the standard applied. *See Williams*, 417 F.3d at 453 (stating that the defendant "moved to dismiss under Rule 12(b)(6) for failure to state a claim because the complaint did not comply with the requirements of Rule 9(b)"). The reasoning for the holding was that the government should not be bound by the relator's weaknesses in pleading what might be a valid claim, whatever those weaknesses are. In other words, "[w]hy would Congress want [a poorly plead but meritorious] earlier suit to bar a later potentially successful suit that might result in a large recovery for the [g]overnment?" *Kellogg Brown & Root Servs., Inc. v. United States ex rel. Carter*, 135 S. Ct. 1970, 1979 (2015); *see id.* (rejecting an argument that "a first-filed suit would bar all subsequent related suits even if that earlier suit was dismissed for a reason having nothing to do with the merits"). Hence, even if the *In re Plavix Marketing* dismissal was not based on Rule 9(b), an issue we need not decide, *Williams* would still apply here. *See KForce Gov't Sols.*, 2014 WL 5823460, at \*9 (dismissing the relator's complaint where "the facts . . .

plead . . . preclude a claim under the FCA" with prejudice, but without prejudice as to the government).

**Dismissal of Relator's Qui Tam Action Does Not Bar the State's Claims**

{32}     The dismissal order in *In re Plavix Marketing* does not specify whether it is with or without prejudice to Relator or the government. *In re Plavix Mktg.*, 2017 WL 2780744, at *1, *23. Nevertheless, because the order did not provide for a fifth amendment and disposed of all of Relator's claims, we construe it as an adjudication on the merits as to Relator, consistent with the general rule that a dismissal under Rule 12(b)(6) is an adjudication on the merits for claim preclusion purposes. *Moitie*, 452 U.S. at 399 n.3 (stating that "[t]he dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a judgment on the merits" (internal quotation marks and citation omitted)); *see Kirby*, 2010-NMSC-014, ¶ 66 (stating that this approach prevents repetitive suits); *Bralley*, 1985-NMCA-043, ¶ 14 ("An order dismissing a party's entire complaint without authorizing or specifying a definite time for leave to file an amended complaint, is a final order for purposes of appeal.").

{33}     However, for the reasons stated in *Williams* and its progeny, we construe the order as without prejudice to the government. *Cf. Bralley*, 1985-NMCA-043, ¶ 18 (stating that "[t]he words 'without prejudice' when used in an order or decree generally indicate that there has been no resolution of the controversy on its merits

23

and leave the issues in litigation open to another suit as if no action had ever been brought"). Thus, as to the State, the federal district court's dismissal of Relator's fourth amended complaint is not a "final judgment on the merits" for claim preclusion purposes. "Because the claim preclusion doctrine does not bar a subsequent lawsuit unless all [of the claim preclusion] elements are met, we do not consider the parties' remaining claim preclusion arguments." *Peterson*, 2014-NMCA-036, ¶ 33.

**CONCLUSION**

{34}     Consistent with federal FCA and claim preclusion law, we construe the *In re Plavix Marketing* dismissal as without prejudice to the State's claims, and, therefore, hold that the dismissal does not bar the State's present claims under the UPA and FATA, as well as common law claims for fraud and unjust enrichment. Accordingly, we affirm the state district court's denial of Defendants' motion to dismiss.

{35}     **IT IS SO ORDERED.**


_____
**LINDA M. VANZI, Chief Judge**

**WE CONCUR:**


_____

24

**J. MILES HANISEE, Judge**


_____
**JULIE J. VARGAS, Judge**