**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2019-NMCA-075**

**Filing Date: September 23, 2019**

**No. A-1-CA-36463**

**JOHN MARQUEZ, HOPE GUTIERREZ
Y MARQUEZ, GLORIA GUTIERREZ,
and GILBERT GUTIERREZ,**

       Plaintiffs-Appellants,

**BOARD OF TRUSTEES FOR THE
ANTON CHICO LAND GRANT,
CRISTOBAL MARQUEZ, ROBERT
MONDRAGON, MAX SISNEROS,
ROMIE MAESTAS, and STONEY
JARAMILLO, individually and in their
capacity as members of the Board of
Trustees of the Anton Chico Land Grant,**

       Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF GUADALUPE COUNTY
Kevin R. Sweazea, District Judge**

Released for Publication December 17, 2019.

Egolf + Ferlic + Harwood
Kate Ferlic
Kristina Caffrey
Santa Fe, NM

for Appellants

Padilla Law Firm, P.A.
Ernest L. Padilla
Santa Fe, NM

for Appellees

**OPINION**

**BOGARDUS, Judge.**

**{1}** John Marquez, Hope Gutierrez y Marquez, Gloria Gutierrez, and Gilbert Gutierrez (Plaintiffs) appeal from the district court's order denying their motion for attorney fees and costs. At issue is whether Plaintiffs were the "prevailing party" under 42 U.S.C. § 1988 (2018) in their claim against the Board of Trustees of the Anton Chico Land Grant (the Board). We hold that Plaintiffs were not the prevailing party in the underlying litigation and therefore affirm, although on grounds different from those relied on by the district court.

## BACKGROUND

**{2}** Plaintiffs petitioned the district court for a temporary restraining order and injunctions against the Board on March 29, 2013. They asserted that they were heirs and qualified voting members of the Anton Chico Land Grant. Among other remedies, they sought to postpone an election scheduled for April 1, 2013, of the land grant's board; Plaintiffs alleged that if the Board conducted the election as planned, the Board would violate the land grant's bylaws and state law and would "deprive[ Plaintiffs] of their rights." Specifically, Plaintiffs alleged that the board election process was "rife with illegalities and corruption." In response, the district court issued a temporary restraining order preventing the Board from taking a vote until certain criteria were met.

**{3}** On April 22, 2013, the Secretary of State filed a motion to intervene in the case. The district court held a hearing on the motion and then granted it on May 8, 2014; in so doing, the court ordered the Secretary of State to investigate the issues raised in Plaintiffs' complaint.

**{4}** The next day, Plaintiffs filed an amended petition. The amended petition added a claim premised on both the facts alleged in the original petition and on additional, related facts. The new claim asserted violations by the Board of Plaintiffs' rights under the equal protection clauses of the Federal and State Constitutions and the Voting Rights Act of 1965. Plaintiffs invoked 42 U.S.C. § 1983 (2018), which establishes liability for civil rights violations, and § 1988(b), which provides that a court may award a reasonable attorney fee to the prevailing party in an action to enforce § 1983.

**{5}** On August 25, 2016, Plaintiffs notified the district court of a partial settlement reached sometime in 2015. Plaintiffs explained that (1) the parties had agreed to changes in the land grant's bylaws on April 29, 2016; (2) the Board had enacted the changes on August 2, 2016; and (3) the parties had agreed to a settlement on liability. Plaintiffs stated that the only outstanding issue in the case was the amount of attorney fees to which Plaintiffs were entitled.

**{6}** Plaintiffs then petitioned the district court for attorney fees and costs, claiming entitlement under § 1988. After a hearing, the district court denied Plaintiffs' motion. The court reasoned that land grants are not governmental entities for purposes of constitutional claims or the Voting Rights Act and, because such status is required for recovery under §§ 1983 and 1988, Plaintiffs' contention of entitlement to attorney fees and costs lacked merit.

**DISCUSSION**

**{7}** As a preliminary matter, we address this Court's jurisdiction to hear this appeal, an issue we instructed the parties to brief. The instruction was based on a possible interpretation of NMSA 1978, Section 1-14-5 (1969), which provides that our Supreme Court has jurisdiction over an appeal "from any judgment or decree entered in" a proceeding over the contest of an election governed by the Election Code, NMSA 1978, §§ 1-1-1 to 1-26-6 (1969, as amended through 2019). Having considered the issue further, we now conclude that Section 1-14-5 does not apply here because, among other reasons, Section 1-14-1 provides in relation to Section 1-14-5 that it is an "unsuccessful candidate for nomination or election to [a] public office" who may contest the election of another candidate, and Plaintiffs are not unsuccessful candidates for nomination or election to a public office. Rather, they are a party seeking an attorney fee award against an already-elected board of trustees of a land grant. This case thus does not fit the criteria our Legislature has established for election-related matters that proceed directly to our Supreme Court on appeal. We therefore conclude that jurisdiction is proper in this Court, and we proceed to the merits.

**{8}** We generally review a district court's award of attorney fees for an abuse of discretion. *N.M. Right to Choose/NARAL v. Johnson*, 1999-NMSC-028, ¶ 6, 127 N.M. 654, 986 P.2d 450. However, this appeal presents one essential question: whether Plaintiffs are entitled to an attorney fee award under § 1988. This question is one of law; accordingly, our review of the district court's order is de novo. *See N.M. Right to Choose/NARAL*, 1999-NMSC-028, ¶ 7.

**{9}** Plaintiffs argue that the district court erred by denying their request for an attorney fee award under § 1988(b), which, they clarify on appeal, is the sole basis for their attorney fee claim. That statute, part of the Civil Rights Attorney's Fees Award Act of 1976, provides that "[i]n any action or proceeding to enforce a provision of [§ 1983] . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs[.]" § 1988(b).

**{10}** Plaintiffs maintain on appeal that they were the prevailing party, as that term is used in § 1988(b), in the underlying litigation. Because we conclude otherwise, we do not, as the district court did, reach the attendant question whether land grants are subject to § 1983 liability. That is, we may affirm a district court order on grounds it did not rely on if doing so would neither be unfair to Plaintiffs, *see Rosette, Inc. v. U.S. Dep't of Interior*, 2007-NMCA-136, ¶ 30, 142 N.M. 717, 169 P.3d 704, nor require "look[ing] beyond the factual allegations that were raised and considered below[,]" *Atherton v. Gopin*, 2015-NMCA-003, ¶ 36, 340 P.3d 630 (internal quotation marks and citation omitted). Because the parties addressed the question of whether Plaintiff was a prevailing party both in the district court and now on appeal, and because our consideration of the issue encompasses only those facts previously raised and considered, the applicable criteria are met. Turning to the question of whether Plaintiffs were the prevailing party in the underlying litigation, we look to principles established by federal case law to determine the answer.

**{11}** The United States Supreme Court considered the status of a plaintiff who pursued a § 1983 claim and whose case was resolved through a settlement enforced by a consent decree in *Maher v. Gagne*, 448 U.S. 122 (1980). Remarking that the plaintiff having prevailed through settlement—not litigation—did not "weaken her claim to fees" and that "[n]othing in the language of § 1988 conditions the [U.S.] District Court's power to award fees . . . on a judicial determination that the plaintiff's rights have been violated[,]" the Court held that the plaintiff was the prevailing party. *Maher*, 448 U.S. at 129, 133. In further support of its position, the U.S. District Court cited text from a Senate report stating that "for purposes of the award of counsel fees, parties may be considered to have prevailed when they vindicate rights through a consent judgment or without formally obtaining relief." *Id.* at 129 (internal quotation marks and citation omitted).

**{12}** Shortly after *Maher* was decided, the Supreme Court made two statements introducing the requirement that a party's claim have at least some merit before an award in this context is made. These statements influence our analysis here. First, the Court stated:

> [O]nly when a party has prevailed on the merits of at least some of his claims . . . has there been a determination of the substantial rights of the parties, which Congress determined was a necessary foundation for departing from the usual rule in this country that each party is to bear the expense of his own attorney.

*Hanrahan v. Hampton*, 446 U.S. 754, 758 (1980) (internal quotation marks omitted). Second, it stated that "[r]espect for ordinary language requires that a plaintiff receive at least some relief on the merits of his claim before he can be said to prevail." *Hewitt v. Helms*, 482 U.S. 755, 760 (1987).

**{13}** The Supreme Court further clarified the prerequisites for prevailing party status—and articulated points central to our holding in this case—in *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources*, 532 U.S. 598 (2001). The *Buckhannon* plaintiffs sued the State of West Virginia and others, alleging that a state statutory provision, to which the plaintiffs were subject, violated federal law. *Id.* at 600-01. The West Virginia legislature then amended the statutory provision and the case was dismissed. *Id.* at 601. The plaintiffs sought an attorney fee award under a fee-shifting statute and under a "catalyst theory" of having prevailed: that is, a theory accepting that "a plaintiff is a 'prevailing party' if it achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." *Id.*

**{14}** The *Buckhannon* Court, however, rejected the catalyst theory. The Supreme Court denied the award of attorney fees because, in its words, "[w]e cannot agree that the term 'prevailing party' authorizes federal courts to award attorney's fees to a plaintiff who, by simply filing a nonfrivolous but nonetheless potentially meritless lawsuit (it will never be determined), has reached the sought-after destination without obtaining any judicial relief." *Id.* at 606 (internal quotation marks and citation omitted). The Court

clarified *Maher*, stating that such judicial relief can take the form of a consent decree because it "is a court-ordered change in the legal relationship between the [parties]." *Buckhannon*, 532 U.S. at 604 (alterations, internal quotation marks, and citation omitted). The Court reasoned that such a change is distinct from the situation of "[a] defendant's voluntary change in conduct," which, it commented, "lacks the necessary judicial imprimatur on the change." *Id.* at 605.

**{15}** Based on principles established by these cases, we reason that, in lawsuits resolved by settlement agreement, prevailing party status for § 1988 purposes is available only when a party secures judicial relief. This relief must take the form of a "material alteration of the legal relationship" between the party and its adversary. *Buckhannon*, 532 U.S. at 604 (internal quotation marks and citation omitted).

**{16}** Such judicial relief is absent in this case. Here, the parties entered into a settlement agreement, but the agreement was not enforced through a consent decree, as was the settlement in *Maher*. And although there can be a "prevailing party" when judicial enforcement of a settlement takes a form not formally titled "consent decree," *see Bell v. Bd. of Cty. Comm'rs of Jefferson Cty.*, 451 F.3d 1097, 1103 (10th Cir. 2006) ("Most circuits recognize that some settlement agreements, even though not explicitly labeled as a 'consent decree' may confer 'prevailing party' status, if they are sufficiently analogous to a consent decree." (internal quotation marks and citation omitted)), the fact remains that the litigation in this case did not produce the court-ordered change in the legal relationship between Plaintiffs and the Board necessary for Plaintiffs to receive a fee award under § 1988.

**{17}** Plaintiffs argue that the election-related changes to the land grant's bylaws "materially altered the legal relationship between the parties." But this argument fails because the district court did not order those changes. To the contrary, our review of the record reveals that the court had no substantive involvement in the case from the time it ordered the Secretary of State's investigation until the time the court decided the attorney fee issue. By then, the dispute fueling Plaintiffs' merit-based claims had been resolved by settlement agreement. It was resolved because, much like the West Virginia legislature in *Buckhannon* voluntarily amended the offending law, the Board voluntarily amended its bylaws to Plaintiffs' satisfaction. Such a voluntary change in conduct— even though constituting the change Plaintiffs sought in suing the Board—is insufficient under *Buckhannon* to make Plaintiffs the prevailing party under § 1988(b). *Cf. Sanchez v. Bd. of E. N.M.*, 361 F. App'x. 980, 984 (10th Cir. 2010) (holding that the plaintiff who alleged civil rights violations by a college's use of its board election system and who entered into a settlement agreement with the defendants to rectify those alleged violations was not a prevailing party under § 1988(b) because there was no judicial imprimatur on the agreement). Furthermore, Plaintiffs' and the Board's settlement agreement memorializing the Board's change in conduct never received the judicial imprimatur needed to give rise to prevailing party status. *See generally* Anthony DiSarro, *Six Decrees of Separation: Settlement Agreements & Consent Orders in Federal Civil Litigation*, 60 Am. U. L. Rev. 275, 321-28 (2010) (explaining the difference between an instrument, like a private settlement agreement whose terms are not

incorporated into a court order, and an instrument enforceable through judicial oversight and remarking that the first type of instrument does not produce a "prevailing party").

**{18}** We conclude that Plaintiffs are not a "prevailing party" and therefore are not entitled to an attorney fee award under § 1988. The district court thus did not err by denying Plaintiffs' request for an attorney fee award.

**CONCLUSION**

**{19}** We affirm.

**{20} IT IS SO ORDERED.**

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Judge**

**JACQUELINE R. MEDINA, Judge**